## IN THE UNITED STATES DISTRICT COURT
## FOR THE EASTERN DISTRICT OF PENNSYLVANIA

JEFFREY A. ROBERTSON,      :
               Plaintiff,  :
                         :
              v.           :     CIVIL ACTION
                         :     No.
PFIZER RETIREMENT COMMITTEE,  :
and FIDELITY EXECUTIVE      :
SERVICES d/b/a FIDELITY         :
EMPLOYER SERVICES COMPANY,  :
LLC,                      :
          Defendants.  :

## C O M P L A I N T

1.     The 1974 Employee Retirement Income Security Act (better known as "ERISA") imposes an affirmative duty on plan fiduciaries to act "solely in the interest of [plan] participants and beneficiaries."   ERISA, Section 404(a)(1), 29 U.S.C. § 1104(a)(1).

2.     Deceiving plan participants and beneficiaries or failing to provide them with all the material information they need to make informed decisions is thus "inconsistent with the duty of loyalty owed by all fiduciaries and codified in section 404(a)(1) of ERISA."   Varity Corp. v. Howe, 516 U.S. 489, 506 (1996).  So too, as the Third Circuit has held:

> [T]he duty to inform . . . entails not only a negative
> duty not to misinform, but also an affirmative duty to
> inform when the trustee knows that silence might be
> harmful.

Bixler v. Central Pennsylvania Teamsters Health and Welfare Fund, 12 F.3d 1292, 1300 (3d Cir. 1993).

3.      In this case, defendants Pfizer Retirement Committee and Fidelity Executive Services d/b/a Fidelity Employer Services Company, LLC, acting as ERISA plan fiduciaries, failed to disclose to plaintiff Jeffrey A. Robertson that hundreds of thousands of dollars due him under the Pfizer Consolidated Pension Plan were subject to immediate federal and state taxation and, thus, could not be rolled over to another qualified retirement account.

4.      For months before he retired, Mr. Robertson was in touch with defendants regarding the timing of his retirement and the amount of the pension payments he would receive and roll over to another tax qualified account.  Not once did they inform him that a portion of his pension payments (a substantial portion) could not be rolled over, but rather, would become immediately subject to taxes due to a lump sum distribution to him.

5.      It was not until January 2017, more than two months  after  Mr. Robertson retired, that defendants informed him that due to limits set by the Internal Revenue Code, it was necessary for them to shift $715,507.00 from his defined benefit pension plan to a non-qualified plan that required him, on receipt, to pay federal and states taxes on that payment.

6.      Had defendants not concealed this information from him, Mr. Robertson would not have retired in October 2016.  Instead, he would have continued working for Pfizer as a highly compensated executive and deferred his retirement to a later time in order to (a) take account of and better prepare for the tax implications of a lump sum

2

distribution of portions of his pension, and (b) to better use those funds to achieve his long term investment goals.

7.      Mr. Robertson's administrative appeal of defendants' fiduciary breaches was rejected by the Pfizer Retirement Committee.  As a result, he has today filed this lawsuit against both of them for declaratory, injunctive and "other equitable relief" as authorized by Section 502(a)(3) of ERISA, 29 U.S.C. § 1132(a)(3).

**JURISDICTION**

8.      The Court has subject matter jurisdiction over plaintiff  Robertson's breach of fiduciary duty claims pursuant to Section 502(a)(3) of ERISA, 29 U.S.C. § 1132(a)(3).

9.      The Court also has personal jurisdictional over the parties since plaintiff consents to it and the breaches of duty by defendants took place here, the defendants reside here and the Pfizer Consolidated Pension Plan is in part administered here.

**VENUE**

10.      Venue is properly laid in this judicial district pursuant to ERISA's special venue provision, Section 502(e)(2), 29 U.S.C. § 1132(e)(2), which states in relevant part:

> [w]here an action under this subchapter is brought in a district court of the United States, it may be brought in the district where the plan is administered, where the breach took place, or where a defendant resides or may be found, and process may be served in any other district where a defendant resides or may be found.

## THE PARTIES

11.    At all relevant times, plaintiff Robertson was employed by Pfizer, Inc. ("Pfizer") and during that time he resided in this judicial district. And it was here that defendants' breaches of his ERISA rights occurred. Currently, plaintiff Robertson resides in Norwood, North Carolina.

12.    Also at all relevant times plaintiff was a participant and beneficiary of the Pfizer Consolidated Pension Plan.

13.    Defendant Pfizer Retirement Committee is the Plan Administrator and the named fiduciary of the Pfizer Consolidated Pension Plan. It maintains offices at 100 Route 206 North (MS 135), Peapack, New Jersey 07977 at which plaintiff Robertson was directed to appeal his claim that defendants had breached the fiduciary duties they owed to him.

14.    Defendant Fidelity Executive Services d/b/a Fidelity Employer Services Company, LLC ("Fidelity") maintains an office located at 1735 Market Street, Suite 118, Philadelphia, Pennsylvania 19103.

15.    Defendant Fidelity acts and has acted at all relevant times as an agent or ostensible agent of defendant Pfizer Retirement Committee and, by contract, provides and conveys, and has provided and conveyed, retirement information and services to Pfizer employees and former employees, including plaintiff Robertson.

16.    In that capacity, Fidelity is and at all relevant times has been a fiduciary under the Pfizer Consolidated Pension Plan and has acted as a fiduciary in regard to plaintiff Robertson's retirement-related contacts with it.

4

**EXHAUSTION OF ADMINISTRATIVE REMEDIES**

17.    By letter dated April 4, 2017, Amy Manning, Director, Retirement Plans, notified plaintiff that his claim for breach of fiduciary duties was denied and that he could appeal that decision to the Pfizer Retirement Committee.

18.    In response, plaintiff Robertson appealed that decision in a letter dated May 20, 2017 that he sent to Ms. Manning and addressed, as she directed, to her at 100 Route 206 North (MS 135), Peapack, New Jersey 07977.

19.    By letter dated August 11, 2017, Mary C. Crotty, Secretary to the Pfizer Retirement Committee, notified plaintiff Robertson that his appeal was denied.

20.    All of plaintiff Robertson's administrative remedies have thus been exhausted and this ERISA lawsuit has been timely filed against defendants Pfizer Retirement Committee and Fidelity.

**STATEMENT OF FACTS**

21.    For 33 years, from October 1983 to October 2016, Mr. Robertson was employed by Wyeth Laboratories ("Wyeth") and Pfizer in a number of sales and sales management positions.

22.    Mr. Robertson began his career with Wyeth as a sales representative.  In 1992, he was promoted to District Sales Manager in North Carolina.  In 1996 he was promoted to Area Development Manager in the Atlanta Regional office.  In 1999 he was promoted to the position of Director of Business Operations in Radnor, Pennsylvania.  In 2001 he was promoted to Area Business Director in Kennesaw, Georgia.

23.     In 2006, Mr. Robertson was again promoted, this time to the position of Assistant Vice President for Sales, Planning and Insights in Collegeville, Pennsylvania. He worked in that capacity until October 2009 when Pfizer completed its purchase of Wyeth.

24.     At the close of the acquisition on October 15, 2009, Pfizer selected Mr. Robertson to be its Vice President for U.S. Vaccines Sales.  In that role, he worked at Pfizer's Collegeville, Pennsylvania offices and led the merger of the Wyeth/Pfizer sales staffs into one fully-integrated Pfizer team of more than 500 sales representatives and sales managers.

25.     In the ensuing years Mr. Robertson streamlined Pfizer's sales activities; co-chaired a Specialty Sales Force Assessment Group to improve customer relations and sales force synergies;  and served as the commercial lead for a CEO-sponsored project that helped to gauge and improve sales force productivity.

26.     Throughout his 33 year career, Mr. Robertson served both Wyeth and Pfizer with distinction, integrity and care.

27.     Both Wyeth and Pfizer maintained defined benefit pension plans throughout the course of Mr. Robertson's employment.  As such, he was a participant and beneficiary of both plans which, as of Pfizer's acquisition of Wyeth, merged into the Pfizer Consolidated Pension Plan.

28.     In January 2016, Pfizer notified Mr. Robertson and other highly-compensated executive employees that, at Pfizer's expense, they could utilize the

6

services of Fidelity to obtain the information they needed to optimize their understanding and use of Pfizer benefits, including their individual retirement choices.

29.     To that end, by letter dated February 2, 2016, Jeanette Morgan Barrett, Fidelity's Vice President of Executive Planning, notified Mr. Robertson that she and "her team of financial professionals" were "responsible for providing you with the guidance and specialized support you may need to maximize the value of your Pfizer executive benefits." A true and correct copy of that letter is attached hereto and marked Exhibit A.

30.     Following his receipt of that letter, Mr. Robertson contacted Ms. Morgan Barrett for assistance; in turn, she directed him to members of her services team for help in regard to his retirement decision and the various documents he would need to submit in connection with it.

31.     At Fidelity, Mr. Robertson's assigned contact was Ryan Wilham. From time-to-time, he also contacted and conferred with other Fidelity professionals.

32.     Concurrent with considering his retirement options, Mr. Robertson also met with Pfizer Senior Human Resources leaders (Kim Stepanski by telephone and Sherry Cassano in person) as well as senior business leaders (Susan Silbermann and Mike Gladstone, both in person) to assess longer career options if he chose to maintain his employment at Pfizer and retire at a later date.

33.     In considering whether and when to retire, Mr. Robertson considered and modeled several alternatives. Among those were potential retirement dates in 2016, 2017 and 2018.

34.     In doing so, he learned that as of October 2016, he could be eligible for a non-reduced early retirement pension under the legacy Wyeth Pension Plan based on his years of service (30 or more) and his age (55 as of October 16, 2016).

35.     He also learned that as of October 2017, he would be eligible for a non-reduced retirement under the Pfizer Pension Plan's "Rule of 90" under which his age (56 as of October 16, 2017) and his years of combined Wyeth/Pfizer service (34 years as of October 16, 2017) equaled 90.

36.     As part of his consideration of his retirement options, Pfizer provided Mr. Robertson with a modeling tool through an online website "Fidelity NetBenefits." Through that tool, he was able to calculate his pension payments based on several potential retirement dates, including: October 2016 when he reached his Wyeth milestone; February and April 2017 based on the base wages, bonuses, stock and deferred compensation he would continue to earn as a Pfizer employee; and October 2017 when he would achieve Pfizer's Rule of 90 for early non-reduced retirement under the Pfizer Consolidated Pension Plan.

37.     Throughout the months in 2016 that Mr. Robertson considered his options, he remained in touch with Mr. Wilham at Fidelity and with his Human Resources contacts at Pfizer.

38.     From Mr. Wilham of Fidelity, Mr. Robertson was provided with two Retirement Modeling Statements -- both of which matched the online modeling statement he received from Pfizer.

39.     In the end, after considering all his options, Mr. Robertson chose to retire from Pfizer on October 31, 2016 -- a decision he made only after he received written confirmation from Fidelity that its pension calculations as of that date matched his online calculations based on the modeling tool provided by "Fidelity NetBenefits®" (see ¶ 36, *supra*).

40.     Based on those matched modeling calculations, Mr. Robertson timely notified his supervisor that he was retiring effective October 31, 2016.

41.     In effecting his decision, Mr. Robertson also provided Mr. Wilham and Pfizer with his updated contact information (he and his wife planned on moving to North Carolina in January 2017) and all the completed paperwork needed to effect his retirement from Pfizer.

42.     At no point during this months-long process did anyone from Pfizer, its Retirement Committee or anyone from Fidelity ever inform Mr. Robertson that there were IRS caps or limits that would require and cause a significant shift of his retirement payments from the Wyeth/Pfizer Qualified Plan to a Non-Qualified Supplemental Executive Retirement Plan ("SERP").

43.     Nor did Mr. Robertson have any knowledge that such a shift of his pension payments would occur and result in a substantial tax liability he would be forced to pay.

44.     It was not until January 5, 2017 -- nine weeks after his October 31, 2016 retirement -- that Mr. Robertson was informed that that $715,507.00 of the $1,768,913.00 pension payment he was due from the legacy Wyeth Pension Plan would be shifted to a Non-Qualified Plan (a SERP) which (a) could not be rolled over to a qualified Plan, and

(b)  would  be  subject to immediate federal and state taxes based on the lump sum distribution of the $715,507.00 directly to him.

45.    Mr. Robertson was shocked to learn of this turn of events and registered his complaints about this material omission to, among others, Mr. Wilham of Fidelity and to Amy Manning, the Director of Retirement Plans for the Pfizer Consolidated Pension Plan.

46.    As Mr. Robertson informed Mr. Wilham in a January 5, 2017 e-mail:

> I am shocked today to learn of this dramatic change in plan benefit and that it was not included in any prior discussions, documents, or benefit modeling that informed my decisions.

A true and correct copy of that e-mail is attached hereto and marked Exhibit B.

47.    Similarly, as Mr. Robertson informed Ms. Manning in a January 11, 2017 e-mail:

> As we discussed yesterday, this unexpected and uncommunicated change in plan benefit was not taken into consideration when I decided to conclude my 33 year career with Pfizer.
>
> *        *        *
>
> As this change in benefit was communicated over two months after my last day worked, I now have no options to manage the outcome.  I now have a significantly increased immediate tax liability, reduced ability to plan for tax liability over time, and of critical importance, an immediate loss of hundreds of thousands of dollars in long term investment planning from a qualified plan.

10

A true and correct copy of that e-mail is attached hereto and marked Exhibit C (emphasis in original).

48.     Neither Mr. Wilham nor Ms. Manning, nor anyone else from Fidelity or Pfizer's Retirement Committee undertook any steps to remedy their fiduciary breaches of his rights under ERISA.

49.     Nor did they heed Mr. Robertson's request not to pay him the taxable portion of his pension so that the parties, in good faith, could explore reasonable ways to resolve this dispute on an amicable basis.

50.     As a result, Mr. Robertson was sent, received and deposited the at-issue $715,507.00 lump sum payment and thus incurred a substantial federal and state tax liability that, but for defendants' violation of his ERISA rights, he otherwise would not have incurred.

## CLAIMS FOR RELIEF

### COUNT I:
### BREACH OF FIDUCIARY DUTY BY
### DEFENDANT PFIZER RETIREMENT COMMITTEE

51.     Mr. Robertson repeats and incorporates by reference the allegations set out in paragraph 1 through 50 of his Complaint.

52.     At all relevant times hereto, defendant Pfizer Retirement Committee was the Plan Administrator and fiduciary of the Pfizer Consolidated Pension Plan.

53.     At all relevant times hereto, defendant Pfizer Retirement Committee was required by ERISA to act solely in the interests of Mr. Robertson as a participant and

11

beneficiary and to exercise the degree of "care, skill, prudence, and diligence under the circumstances then prevailing that a prudent man acting in like capacity and familiar with such matter would use in the conduct of an enterprise of a like character and with like aims."  Section 404(a)(1)(B), 29 U.S.C. § 1104(a)(1)(B).

54.     Defendant Pfizer Retirement Committee breached the fiduciary duties it owed Mr. Robertson by concealing and not informing him that a substantial portion of his pension could not be paid through its qualified plan and rolled over to another one, but instead would be paid to him via a taxable lump sum payment.

55.     These omissions by the Pfizer Retirement Committee were material.

56.     Mr. Robertson relied to his detriment on these omissions.

57.     Had defendants not concealed the information he needed to make an informed decision, Mr. Robertson would not have retired in October 2016, but would instead have continued his employment at Pfizer until a later time of his choosing.

58.     As a direct and proximate result of this breach, Mr. Robertson incurred a substantial federal and state tax liability or the lump sum paid to him and lost the ability to achieve his long-term tax and investment goals.

59.     To remedy the violation of his rights, pursuant to Section 502(a)(3) of ERISA, 29 U.S.C. § 1132(a)(3), Mr. Robertson is entitled to a declaratory judgment, an injunction and "other equitable relief" against defendant Pfizer Retirement Committee.

## COUNT II:
## BREACH OF FIDUCIARY DUTY BY DEFENDANT
## FIDELITY EXECUTIVE SERVICES d/b/a
## FIDELITY EMPLOYER SERVICES COMPANY, LLC

60.     Mr. Robertson repeats and incorporates by reference the allegations set out in paragraph 1 through 59 of his Complaint.

61.     At all relevant times, defendant Fidelity was a party to a written agreement with Pfizer under which it provided and conveyed retirement information services to plan participants and beneficiaries such as Mr. Robertson.

62.     In doing so, Fidelity undertook and performed fiduciary duties to Mr. Robertson under which, *inter alia*, it was required by ERISA to act solely in his best interests and to exercise the degree of "care, skill, prudence, and diligence under the circumstances then prevailing that a prudent man acting in like capacity and familiar with such matter would use in the conduct of an enterprise of a like character and with like aims."  Section 404(a)(1)(B), 29 U.S.C. § 1104(a)(1)(B).

63.     Defendant Fidelity breached the fiduciary duties it owed Mr. Robertson by concealing and not informing him that a substantial portion of his pension could not be paid through a qualified plan and rolled over to another one, but instead would be paid to him via a taxable lump sum payment.

64.     These omissions by Fidelity were material.

65.     Mr. Robertson relied to his detriment on these omissions.

66.     Had defendants not concealed the information he needed to make an informed decision, Mr. Robertson would not have retired in October 2016, but would instead have continued his employment at Pfizer until a later time of his choosing.

67.     As a direct and proximate result of this breach, Mr. Robertson incurred a substantial federal and state tax liability on the lump sum distributed to him and also lost the ability to achieve his long-term tax and investment goals.

68.     To remedy the violation of his rights, pursuant to Section 502(a)(3) of ERISA, Mr. Robertson is entitled to a declaratory judgment, an injunction and "other equitable relief" against defendant Fidelity.

## PRAYER FOR RELIEF

WHEREFORE, Mr. Robertson respectfully requests the Court to enter judgment in his favor and against both defendants Pfizer Retirement Committee and Fidelity Executive Services d/b/a Fidelity Employer Services Company, LLC, and to include in it the following relief:

        a.     A declaratory judgment holding that both defendants breached their fiduciary duties to him;

        b.     An injunction requiring both defendants to make him whole via restitution for their violations of his rights under ERISA;

c.   An injunction ordering the Pfizer Retirement Committee to allow Mr. Robertson to rescind his decision to retire from Pfizer effective October 31, 2016;

d.   An injunction ordering the Pfizer Retirement Committee to reinstate him without break in service as a participant and beneficiary in the Pfizer Consolidated Pension Plan;

e.   An injunction allowing Mr. Robertson, if he so chooses, to seek reinstatement to a suitable job at Pfizer;

f.   An award of reasonable counsel fees and costs; and

g.   Such other legal and equitable relief as may be just and proper under the circumstances.

RAYNES McCARTY

By: _____
Harold I. Goodman, Esquire
Daniel Bencivenga, Esquire
1845 Walnut Street
20th Floor
Philadelphia, PA 19103
215 - 568 - 6190

Attorney for Plaintiff Jeffrey A. Robertson

Dated:  January 19, 2018

15

# **Exhibit A**

**FIDELITY EXECUTIVE SERVICES**℠

February 2, 2016

1-0011
Jeffrey A Robertson
661 Saint Matthews Rd
Chester Springs, PA 19425-3719

Dear Jeffrey A Robertson:

It is my sincere pleasure to welcome you to Fidelity Executive Services℠.

As your Executive Planning Consultant, I am responsible for providing you with the guidance and specialized support you may need to maximize the value of your Pfizer executive benefits. In addition, I am assisted by a team of financial professionals who are ready to help you with day-to-day support and services.

**Please call 800.533.8004 to schedule your initial consultation.**

Together, we will review your benefits opportunities, your current choices, and the appropriate next steps. I can also help align your benefits decisions with your larger wealth planning objectives, an important step in your overall financial success. We can meet at your workplace or via the phone, at a time that's convenient for you.

If you have any questions, feel free to call my team at 800.533.8004 or email me at jeanette.morgan@fmr.com.

I look forward to meeting you—and to helping you develop a plan that truly integrates your benefit programs with your overall financial goals.

Sincerely,

*Jeanette M. Barrett*

Jeanette Morgan Barrett
Vice President
Executive Planning Consultant
Fidelity Executive Services



**Jeanette Morgan Barrett
Vice President
Executive Planning
Consultant
Fidelity Executive Services**

1735 Market Street
Suite 118
Philadelphia, PA 19103
jeanette.morgan@fmr.com

Guidance provided by Fidelity is educational.

Fidelity Brokerage Services LLC, Member NYSE, SIPC, 900 Salem Street, Smithfield, RI 02917
© 2016 FMR LLC. All rights reserved.
1.9868416.100                                    705242.1.18    25612-09/0116



# Exhibit B

**From:** Jeff Robertson
**Sent:** Thursday, January 5, 2017 6:28 PM
**To:** ExecutiveParticipantServices@fidelity.com
**Subject:** Re: Pfizer Pension Payments

Ryan,

Thanks for your follow up on this concern and your time this afternoon to discuss your findings. Your resources report that the third party auditor (Mercer) has determined that some combination of IRS rules and my early retirement factors result in a shift of approximately $715K of qualified retirement benefits to a non-qualified benefit. This change in benefit was relayed to me on January 5 2017. You indicated that you would get more complete information in writing that explains exactly why this combination of IRS regulations and early retirement would result in such a change.

In addition to this information, I have requested an explanation of why this was not included in any way when I was evaluating my decision to retire from Pfizer. The potential of this shifting of benefit is not reflected in the Pfizer Retirement Modeling tool and was not included in the Pension Benefit Modeling Statement I was required to receive and review in writing prior to requesting the benefit to be processed. While this appears to keep the same dollar benefit, the shift in plan type dramatically impacts my immediate tax liability. I do not understand or accept that my benefit is so dramatically different from what was modeled for me to make such a critical career and financial decision.

You indicated that you would investigate other options that I might be able to consider. One potential mentioned was to leverage a deferred payout that may give me other options to manage tax liability. I will need to confer with my accountant and tax advisor on any other options in order to make an informed decision in any new scenario. As such, I request again that payments are paused until this issue is explained and sorted out.

I do not feel I was fully, adequately or correctly informed to make a once in 33 year decision to end my career and retire from Pfizer. In August of 2016, I provided Pfizer the required lead time ahead of my last day worked on October 31. Today I find myself scrambling to understand a substantial change in my financial plan the day before the benefit is reported to be paid. I have maintained contact with you and your colleagues throughout this process. On each occasion, we accomplished what was needed to continue the benefits process. I am shocked today to learn of this dramatic

change in plan benefit and that it was not included in any prior discussions, documents, or benefit modeling that informed my decisions.

Jeff Robertson

# Exhibit C

**From:** jeff.a.robertson10@gmail.com [mailto:jeff.a.robertson10@gmail.com]
**Sent:** Wednesday, January 11, 2017 11:32 AM
**To:** Manning, Amy
**Cc:** Cassano, Sherry; Frieling, Susan; jeff.a.robertson10@gmail.com
**Subject:** Thanks for your follow up and time on Tuesday Jan 10

Amy,

Thanks for your follow up with the Fidelity Executive Participants Services team and your colleagues in Pfizer Benefits. I appreciate your engagement to understand the dynamics concerning the changes in my retirement benefits as well as the related communication issues. I am copying Sue Frieling and Sherry Cassano on this email as they helped connect me with you and both are familiar with aspects of the evaluation process I followed in my decision to retire, ending my career at Pfizer.

From our conversation yesterday, I understand more information is coming to help me understand the factors that shift a significant portion of my expected qualified pension benefit under the Wyeth plan to an unexpected benefit payment in the non-qualified Wyeth plan. I realize that pension plans and related benefits must follow tax regulations. As such, I understand that the non-qualified benefit, including the unexpected portion shifted from the qualified plan, will be processed for payment in the coming weeks. As a result, I will be liable for the required federal and state taxes at the time of the processing and payment.

As we discussed yesterday, this unexpected and uncommunicated change in plan benefit was not taken into consideration when I decided to conclude my 33 year career with Pfizer. In my decision process, I evaluated several timing scenarios in the Pension Modeling tool. In addition to October 2016, I evaluated various scenarios for 2017 (March and October 2017 scenarios). I compared these scenarios

to help me evaluate the benefits of staying until RSU / TRSUs vest, or until I reached the one year period for me to receive the Wyeth Supplemental Retirement Plan 409A as a DCP benefit. I evaluated the benefit of remaining through October of 2017 in order to meet the Rule of 90 benefit for the Pfizer portion of my retirement plan. In each of these options, there was a potential benefit of extending service with compensation, activating additional RSU / TRSU benefits, or leveraging DCP. Underpinning my evaluation of each of these scenarios was the clear understanding that interest rates are key factors in the computations of these benefits.

As I evaluated these retirement benefit scenarios, I also met with select Pfizer leaders in HR and PIH. Before I chose any retirement scenario, I wanted to evaluate options to continue my career in Pfizer that would extend compensation, time of service, participation in medical benefits, potential work locations, etc.

regulations that govern qualified plans are well established as were my time of service and compensation at Pfizer. I submitted the required paperwork well in advance of my planned last day worked. As this change in benefit was communicated <u>over two months</u> after my last day worked, I now have no options to manage the outcome. I now have a significantly increased immediate tax liability, reduced ability to plan for tax liability over time, and of <u>crucial importance</u>, an immediate loss of hundreds of thousands of dollars in long term investment planning from a qualified plan. Adding to this issue, I will now incur additional costs with my CPA and tax advisor to adjust to the new dynamic in tax liability. I still do not have a new statement of benefits across the plans. I know what was processed for the qualified plans but do not have specific information on the new scenario of non-qualified benefit payments.

I do appreciate the work you and your team have put into understanding the dynamics of this stressful situation. I deeply hope my experience can help others make more informed decisions with improved, timely information. At the same time, I must maintain my personal interests to understand this communication issue that has such implications on my long term plan. I look forward to getting more information on this allocation across benefits, the communication gaps and any potential avenues that may be considered to help resolve the situation.

As I assessed the scenarios and potential career options, I was also aware of specific timelines that are required when requesting retirement benefits. With these scenarios in hand, with conversations underway and with the known effect of rising interest rates, I requested the written Pension Benefit Modeling Statement. When this written statement concurred with the October 2016 scenario I modeled in the on line tool, I felt reassured that the Pfizer and Wyeth Plan Benefit numbers were reasonably accurate. I remained aware of the impact of changing interest rates but was not aware of any potential shift in benefits across qualified and non-qualified plans. I do not have any information from the Executive Participants Team at Fidelity as employed by Pfizer that disclosed the potential of such a shift in benefits and immediate tax liability.

In my final decision, I felt the retirement benefits I earned over 33 years and as reflected in the written statement were compelling. Historically low interest rates influenced both the lump sum rates and my decision to elect the financial benefits associated with retirement on October 31, 2016. I communicated my retirement decision to my supervisor and completed all required submissions to initiate and advance the retirement process. I remained in frequent communication with the Executive Services team to be sure all information was received, to enroll in retiree medical and to provide any updates in mailing address. I am on record during one call on December 19 confirming the timing of benefits as I finalized year end tax planning. I was told that benefits would process in 2017, but was provided no information on changes in benefit across qualified and non-qualified plans.

On January 5, 2017 I received an email from the Executive Services Associate that my benefits would pay on January 6. I wrote back asking for more information and subsequently called the services line for more immediate information (I understand that emails first go to a central clearing process before they go to the services associate). During this phone call was when I first received information on the reduction in the Qualified Wyeth Retirement Plan. The associate I spoke with did not have immediate access to information on the reduction or that it was reallocated to a different plan benefit. He did further research and called me back to explain the substantial reduction in qualified benefit was now reflected in a non-qualified plan.

Over my career, I was recognized for making thorough assessments and considering many scenarios that may offer ranges of benefits or risks. I felt at peace with my assessment process in deciding to retire and end my career in Pfizer. I felt the retirement benefits that I earned over this career along with my other savings over time provided my wife and me options to pursue new chapters. I now find myself questioning what I could have done differently. I used all information available to me to make this decision and do not understand how this change could emerge so late in the process. The tax

I know you are traveling and that follow up may take several days to complete. I hope you have safe and productive travels this week. Thank you again for your engagement in this unexpected and stressful issue.

Jeff Robertson