IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| **JEFFREY A. ROBERTSON** | : | CIVIL ACTION |
| *Plaintiff* | : | |
| | : | NO. 18-0246 |
| **v.** | : | |
| | : | |
| **PFIZER RETIREMENT COMMITTEE,** *et al.* | : | |
| *Defendants* | : | |

NITZA I. QUIÑONES ALEJANDRO, J.                                                            JULY 27, 2018

# MEMORANDUM OPINION

**INTRODUCTION**

Jeffrey A. Robertson ("Plaintiff") filed a civil action premised on a claim for breach of fiduciary duty against Defendant PRC Retirement Committee ("Defendant PRC") and Defendant Fidelity Workplace Services d/b/a Fidelity Employer Workplace Services Company, LLC,[1] ("Defendant Fidelity") (collectively, "Defendants") pursuant to Section 502(a)(3) of the Employee Retirement Income Security Act ("ERISA"), 29 U.S.C. § 1132(a)(3). [ECF 1]. Before this Court is Defendants' motion to dismiss for improper venue filed pursuant to Federal Rule of Civil Procedure ("Rule") 12(b)(3) or, alternatively, a motion to transfer venue to the United States District Court for the Southern District of New York. [ECF 11]. Specifically, the basis for the motion centers on a forum-selection clause in the Pfizer Consolidated Pension Plan, which is governed by ERISA. [ECF 11-1 at 1]. Plaintiff opposes the motion. [ECF 15]. The issues raised by the parties have been fully briefed and are ripe for disposition.[2] For the reasons set forth,

---

[1]     Defendant Fidelity Workplace Services LLC was incorrectly identified in the complaint as Fidelity Executive Services d/b/a Fidelity Employer Services Company, LLC.

[2]     This Court has also considered Defendants' reply, [ECF 18], Plaintiff's motion for oral argument and/or hearing on Defendants' motion to dismiss or transfer venue, [ECF 19], and Defendants' motion to strike and opposition to Plaintiff's motion for oral argument and/or hearing. [ECF 20].

Defendants' motion is granted, *in part*, and, accordingly, the matter is transferred to the United States District Court for the Southern District of New York.

## BACKGROUND

The procedural and factual histories are known to the parties. Thus, only the pertinent facts to the motion to dismiss and/or transfer will be discussed; *to wit*:

> Plaintiff was employed by Pfizer, Inc., in a variety of sales positions commencing in 1983. [ECF 1 at ¶ 5]. As an employee of Pfizer, Plaintiff participated in and was a beneficiary of the Pfizer Consolidated Pension Plan ("Plan").[3] [*Id.* at ¶ 3]. Defendant PRC was the Plan administrator. Defendant Fidelity acted as a contracted agent of Defendant PRC, providing retirement information services to the Plan's beneficiaries. [*Id.* at ¶¶ 13, 15].
>
> Prior to retiring, Plaintiff utilized the services of Defendant Fidelity to understand the Plan's benefits and create a retirement plan to fit his needs. [*Id.* at ¶¶ 28, 33]. After consulting with Defendants about his potential retirement plan, Plaintiff decided to retire on October 31, 2016. [*Id.* at ¶¶ 37-40]. In January of 2017, nine weeks after retiring, Plaintiff first learned that there were IRS limits on his retirement plan. [*Id.* at ¶¶ 42, 44]. The IRS limits required that $715,507.00 of the Plan's payments be shifted from a qualified plan to a non-qualified plan, thus, subjecting the payments to federal and state taxes upon distribution. [*Id.* at ¶¶ 5-7, 42-44]. In his complaint, Plaintiff alleges that prior to retiring, Defendants did not inform him that his pension would be subject to IRS limits, thus thereby, breaching their fiduciary duty. [*Id.*].
>
> On January 11, 2017, Plaintiff wrote a letter to Amy Manning, Pfizer's Director of Retirement Plans, detailing his complaints and seeking review. [ECF 1 at Ex. C]. By letter dated April 4, 2017, Ms. Manning advised Plaintiff that his "inquiries are being treated as a claim under the Plan" and "[a]fter a thorough review of the facts presented in your correspondence and the Plan provisions your claim for additional benefits or relief from the Plan has been denied." [ECF 15 at Exhibit 2]. Plaintiff was also advised that he could appeal this decision to Defendant PRC in writing within sixty days. [*Id.*]. By letter dated May 20, 2017, Plaintiff appealed the decision to Defendant PRC. [ECF 1 at ¶¶ 17-20; ECF 18 at 2-3]. Defendant PRC responded to Plaintiff on August 11, 2017, denying Plaintiff's appeal, and advised Plaintiff of his right to bring a civil action under § 502 of ERISA in the United States District Court for the Southern District of New York. [ECF 18-2]. Thereafter, Plaintiff filed a civil action in the United States District Court for the Eastern District of Pennsylvania.

---

[3] The Plan is docketed at ECF 21-1.

In January of 2016, while Plaintiff was still employed by Pfizer, a forum-selection clause was added to the Plan. [ECF 18-1 at ¶ 14]. The Plan was re-issued to Plaintiff to reflect this amendment in March of 2017. [*Id.* at ¶ 15]. The forum-selection clause provision provides:

> Any claimant whose claim for benefits has been denied shall have such further rights of review as are provided in sections 502 and 503 of ERISA, and the Retirement Committee shall retain right, authority and discretion as provided in or not expressly limited by sections 502 and 503 of ERISA. Legal action cannot be taken with respect to any denial of a claim hereunder more than one year after the Retirement Committee has made a final determination that such claim shall be denied. **The venue for such legal action shall be the Southern District of New York for claims submitted on or after February 1, 2016.**

(Plan at A-6) (emphasis added).

**LEGAL STANDARD**

As noted, Defendants move to dismiss this case for improper venue pursuant to Rule 12(b)(3) or, in the alternative, to transfer venue to the Southern District of New York in accordance with the forum-selection clause in the Plan. Under Rule 12(b)(3), a court must grant a motion to dismiss if venue is improper. Fed. R. Civ. P. 12(b)(3). "[V]enue is proper so long as the requirements of [the federal venue statute] are met, irrespective of any forum-selection clause . . . ." *See Atl. Marine Const. Co. v. U.S. Dist. Court for W. Dist. of Texas*, 571 U.S. 49, 57 (2013). As such, the appearance of a forum-selection clause in a contract agreed to by the parties, however, does not render venue "wrong" or "improper," if a party files an action in a venue different than the one provided for in the clause. *Id.* at 55, 57.

The applicable venue provision under ERISA specifically provides that:

> Where an action under this subchapter is brought in a district court of the United States, it may be brought in the district where the plan is administered, where the breach took place, or where a defendant resides or may be found, and process may be served in any other district where a defendant resides or may be found.

29 U.S.C. § 1132(e)(2).

Even where venue is proper, a district court may still transfer a case to another federal district pursuant to 28 U.S.C. § 1404(a) on the basis of *forum non conveniens*. Section 1404(a) provides that "[f]or the convenience of parties and witnesses, in the interest of justice, a district court may transfer any civil action to any other district or division where it might have been brought or to any district or division to which all parties have consented." 28 U.S.C. § 1404(a). Where the parties have agreed to a forum-selection clause, a motion to transfer should be considered pursuant to 28 U.S.C. § 1404(a). *Atl. Marine,* 571 U.S. at 52.

Forum-selection clauses are "treated as a manifestation of the parties' preferences as to a convenient forum." *Jumara v. State Farm Ins. Co.,* 55 F.3d 873, 880 (3d Cir. 1995). "When parties agree to a forum-selection clause, they waive the right to challenge the preselected forum as inconvenient or less convenient for themselves or their witnesses, or for their pursuit of the litigation." *Atl. Marine,* 571 U.S. at 64. Such clauses are considered to be "prima facie valid and should be enforced unless enforcement is shown by the resisting party to be 'unreasonable' under the circumstances." *Bremen v. Zapata Off-Shore Co.,* 407 U.S. 1, 10 (1972). In the absence of a forum-selection clause, a court should weigh certain public and private interests to determine whether transfer is warranted. *Jumara,* 55 F.3d at 879. However, when a forum-selection clause exists, the court "must deem the private-interest factors to weigh entirely in favor of the preselected forum" and consider the public-interest factors only. *Atl. Marine,* 571 U.S. at 64.

**DISCUSSION**

In their motion to dismiss, Defendants contend that because this action was brought in the United States District Court for the Eastern District of Pennsylvania, rather than in the United States District Court for the Southern District of New York in accordance with the forum-selection clause, venue in the Eastern District of Pennsylvania is improper and the complaint

4

should be dismissed pursuant to Rule 12(b)(3). In his response, Plaintiff argues that venue is proper in the Eastern District of Pennsylvania, in accordance with the statutory venue requirements of ERISA. Plaintiff further argues that the motion to dismiss, which is premised on the enforcement of the forum-selection clause, should instead be considered as a motion to transfer on the basis of *forum non conveniens* pursuant to 28 U.S.C. § 1404(a). This Court agrees. *See e.g., Atl. Marine,* 571 U.S. at 52.

As noted, the existence of a forum-selection clause does not render venue improper. *See id.* at 57. Thus, this action can only be dismissed if it was improperly brought in this forum. As discussed, ERISA's venue provision allows for a claim to be brought in a district where a breach under the Plan took place. *See* 28 U.S.C. § 1132(e)(2). Here, Plaintiff contends, and does not dispute, that the alleged breach occurred in this district. This Court agrees. Therefore, venue is proper and the motion is denied.

Alternatively, Defendants argue that this case should be transferred to the Southern District of New York pursuant to § 1404(a) consistent with the Plan's forum-selection clause. Plaintiff, however, challenges the validity and enforceability of the forum-selection clause, as well as the scope of the forum-selection clause, the compatibility of the clause with ERISA's venue provision, and whether the Plaintiff acquiesced to, or had notice of, the clause.

Because forum-selection clauses are "treated as a manifestation of the parties' preferences as to a convenient forum," they are typically given deference. *Jumara,* 55 F.3d at 880. Thus, this Court will consider the arguments to determine whether the forum-selection clause is valid and enforceable and, if so, whether the relevant public-interest factors weigh in favor of or against transferring the action to the Southern District of New York. *See Atl. Marine,*

571 U.S. at 67 (holding that the party opposing the motion has the burden of showing that "public-interest factors overwhelmingly disfavor a transfer.").

**Validity and Enforceability of Forum-Selection Clause**[4]

Defendants argue that the forum-selection clause of the Plan is valid and enforceable. Plaintiff disagrees and argues that his claim for breach of fiduciary duty is outside the scope of the clause, that the forum-selection clause is inconsistent with the venue provision of ERISA, and that he did not consent to or receive proper notice of the forum-selection clause. This Court will consider each of the parties' arguments below.

*The scope of the forum-selection clause*

Plaintiff argues that his breach of fiduciary duty claim does not fall within the scope of the forum-selection clause. Specifically, Plaintiff contends that the forum-selection clause only applies to benefits claims, and not to claims for breach of fiduciary duty. Defendants disagree and argue that the forum-selection clause applies to any and all claims submitted through the administrative appeals process provided by the Plan, including Plaintiff's breach of fiduciary duty claim here.

Typically, "[t]he question of the scope of a forum-selection clause is one of contract interpretation." *John Wyeth & Bro. Ltd. v. CIGNA Intern. Corp.,* 119 F.3d 1070, 1073 (3d Cir. 1997). The law that governs the Plan will govern the interpretation of the forum-selection clause. *See Martinez v. Bloomberg, L.P.,* 740 F.3d 211, 220 (2d. Cir. 2014) ("To ensure that the meaning given to a forum-selection clause corresponds with the parties' legitimate expectations, courts must apply the law contractually chosen by the parties to interpret the clause."). While the Plan states that it is to be governed by New York Law, (*See* Plan at A-26), the parties do not rely on

---

[4] Though Plaintiff argues that Defendant Fidelity has not consented or moved to transfer this action to the Southern District of New York, Plaintiff is mistaken. The underlying motion was clearly filed jointly by both Defendants. [*See* ECF 11].

6

any distinctive features of New York law when briefing this issue. Thus, this Court will apply general principles of contract law to the interpretation of the forum-selection clause. *See John Wyeth,* 119 F.3d at 1074 (applying general contract principles to a forum-selection clause that was governed by English contract law where the parties "did not rely on any distinctive features of English law."). When considering the meaning of a contract, "the 'initial resort should be to the 'four corners' of the agreement itself.'" *American Flint Glass Workers Union, AFL-CIO v. Beaumont Glass Co.,* 62 F.3d 574, 581 (3d Cir. 1995) (quoting *Washington Hospital v. White,* 889 F.2d 1294, 1300 (3d Cir. 1989)). A court must determine whether the provision of the contract unambiguously expresses the intentions of the parties; an unambiguous "contract clause must be reasonably capable of only one construction." *Wyeth,* 119 F.3d at 1074. When examining the intent of the parties, "a court must examine the entire agreement." *Williams v. Metzler,* 132 F.3d 937, 947 (3d Cir. 1997). "'A writing is interpreted as a whole, and all writings that are part of the same transaction are interpreted together.'" *Id.* (quoting *Restatement (Second) of Contracts* § 202(2)).

The forum-selection clause at issue appears in the section of the Plan, Article 2, which provides, *inter alia*, the process by which a Plan beneficiary can administratively appeal the denial of a benefits claim. (Plan at A-5). Specifically, it provides that a claimant must submit a written appeal to Defendant PRC within 60 days of receiving a notice of denial. (Plan at A-5). Defendant PRC must then respond within 60 days of receiving a written appeal. (Plan at A-6). If a claimant seeks further review beyond the administrative level, the Plan provides that "[l]egal action cannot be taken with respect to *any denial of a claim hereunder* more than one year after the Retirement Committee has made a final determination that such claim shall be denied. The venue *for such legal action* shall be the Southern District of New York for claims submitted on

or after February 1, 2016." (Plan at A-6) (emphasis added). This Court finds that this provision requires that "any legal action" with respect to "any denial of a claim hereunder" applies to all claims submitted by a claimant through the administrative claims and appeals process.

It is undisputed that Plaintiff submitted his underlying claim to the claims and appeals process provided by Article 2 of Plan. After a review of the facts presented, Plaintiff's claim was initially denied by Pfizer's Director of Retirement Plans. [*See* ECF 15 at Ex. 2]. Per the relevant provision of the Plan, the denial letter advised Plaintiff that if he wished to appeal the decision, he was required to appeal the denial to Defendant PRC in writing within 60 days. [ECF 15 at Exhibit 2]. Plaintiff invoked this process and appealed the denial of his claim to Defendant PRC, explicitly asserting that he was appealing the denial of the claim. [ECF 15 at Ex. 3]. Plaintiff's appeal was again denied, and Plaintiff was advised of his right to bring a civil action under § 502 of ERISA in the Southern District of New York, as contemplated by the forum-selection clause. [ECF 18-2]. Plaintiff instead brought his civil action under § 502 of ERISA in this forum.

Clearly, Plaintiff submitted his claim through the claims and appeals process provided by the Plan. The factual allegations of the claim Plaintiff submitted to the claims and appeals process are the same as those underlying Plaintiff's civil action before this Court.[5] Plaintiff does not dispute that he brought this claim through the claims and appeals process and exhausted the

---

[5] In the complaint, Plaintiff asserts a breach of fiduciary duty claim under § 502 of ERISA. The United States Court of Appeals for the Third Circuit has noted that breach of fiduciary duty claims typically do not have to be administratively exhausted. *See Mallon v. Trover Solutions, Inc.,* 613 F. App'x 142, 143-144 (3d Cir. 2015) (noting that "[a] plaintiff is required to exhaust administrative remedies prior to bringing an ERISA action to recover benefits under a plan" but "exhaustion is not required for claims arising from substantive statutory provisions of ERISA, such as claims for breach of fiduciary duties. . . ."); *Harrow v. Prudential Ins. Co. of America,* 279 F.3d 244, 252 (3d Cir. 2002) (noting that "[w]e apply the exhaustion requirement to ERISA benefit claims, but not to claims arising from violations of substantive statutory provisions."). Though Plaintiff was not required to administratively exhaust his claim, he affirmatively chose to avail himself of the Plan's administrative review process. In doing so, this Court finds that once Plaintiff chose to submit himself to the protections and provisions of the Plan's claims and appeals process, he also submitted to the requirements of the forum-selection clause at issue.

8

administrative process and remedies afforded by the Plan. By adhering to the claims and appeals process of the Plan, Plaintiff triggered the forum-selection clause therein, which applies to "any denial of a claim hereunder." (Plan at A-6). Once Plaintiff proceeded to follow the claims and appeals process, he was not at liberty to pick and choose which directive to follow and which not to follow. As noted, the forum-selection clause provides that the venue for legal action following the denial of claims hereunder shall be the Southern District of New York for claims submitted on or after February 1, 2016. (*See* Plan at A-6). Because Plaintiff chose to avail himself of the claims and appeals provision of the Plan which includes the forum-selection clause, this Court finds that Plaintiff's alleged breach of fiduciary duty claim falls within the scope of the forum-selection clause.

*Plaintiff's argument that the forum-selection clause is inconsistent with the ERISA venue provision argument*

Plaintiff argues that the enforcement of the forum-selection clause in this cause would interfere with the Congressional intent for venue under § 1132(e)(2) of ERISA. Specifically, Plaintiff contends that because the ERISA venue provision is explicit and provides that an action "may be brought in the district where the plan is administered, where the breach took place, or where a defendant resides or may be found," a venue-selection clause provision is not allowed. Plaintiff further argues that venue is not appropriate in the Southern District of New York because the Plan was not administered there, the breach did not occur there, and Defendant PRC is principally located in New Jersey.[6] Thus, allowing a transfer to the Southern District of New York would be incompatible with the venue provision of ERISA. Defendants disagree and argue

---

[6] Plaintiff argues that Defendant PRC is primarily located in Peapack, New Jersey. Defendants argue that Defendant PRC is located in New York, New York, but note that it is not a relevant inquiry due to the existence of the forum-selection clause. Because we find that ERISA's venue provision is permissive and compatible with a forum-selection clause, it is not necessary to determine where exactly Defendant PRC is located.

9

that the venue provision of ERISA is permissive in nature, and that the forum-selection clause does not interfere with the venue provision of ERISA.

The Third Circuit has not yet determined whether a forum-selection clause is incompatible with the ERISA venue provision of 29 U.S.C. § 1132(e)(2). *See Mathias v. Caterpillar,* 203 F. Supp. 3d 570, 578 (E.D. Pa. 2016). However, courts in this district have adopted the reasoning set forth in the Sixth Circuit's decision, *Smith v. Aegon Companies Pension Plan*, 769 F.3d 922 (6th Cir. 2014), which held that the language of 29 U.S.C. § 1132(e)(2) is permissive, and a forum-selection clause can be upheld, "even if the venue selection clause laid venue outside of the three options provided by § 1132 . . . ." *Id.* at 932. In *Smith,* the court explained that "if Congress had wanted to prevent private parties from waiving ERISA's venue provision, Congress could have specifically prohibited such action." *Id.* at 931. In *Mathias v. Caterpillar,* the Honorable Eduardo C. Robreno, expressly adopted the reasoning of *Smith* and held that because the ERISA's venue provision uses the language "may be brought," the venue provision does "not invalidate the [ERISA] plan's venue selection clause. . . ." 203 F. Supp. 3d at 578; *see also In Re Mathias,* 867 F.3d 727, 728 (7th Cir. 2017) (holding that § 1132(e)(2) is permissive and "does not preclude the parties from contractually channeling venue to a particular federal district."). Likewise, other courts within this Circuit have also adopted the persuasive reasoning set forth in *Smith. See also Shah v. Wellmark Blue Cross Blue Shield,* 2017 WL 1186341, at *2 (D.N.J. Mar. 30, 2017) (holding that a forum-selection clause does not infringe upon the public policy of ERISA); *University Spine Center v. 1199SEIU Nat'l Benefit Fund*, 2018 WL 1327109, at *2 (D.N.J. Mar. 15, 2018) (following the reasoning of *Smith* and *Shah* and holding the same).[7]

---

[7] To support his contention, Plaintiff relies on the reasoning of *Boyd v. Grand Trunk Western R. Co.*, 338 U.S. 263, 265 (1949), which held that a forum-selection clause in an action arising under the

This Court is guided and persuaded by the reasoning set forth in *Smith* and *Mathias* and, further, finds that § 1132(e)(2) is permissive as to where an ERISA action "may be brought." 29 U.S.C. § 1132(e)(2). Since it is permissive, the venue provision of § 1132(e)(2) does not render invalid the Plan's forum-selection clause.[8]

*Agreement to and notice of the forum-selection clause*

Plaintiff contends that he did not agree to the forum-selection clause, which was added to the Plan in January 2016 and, further, that he did not receive proper notice of its implementation. Specifically, Plaintiff asserts that he was not aware that the Plan administrators were considering adding a forum-selection clause, that he "had no opportunity to be heard on the venue issue, no idea why the Southern District of New York was chosen, no opportunity to bargain about its selection and no opportunity to accept or reject this amendment to the Pension Plan." [ECF 15-1 at 4-5]. In response, Defendants argue that Plaintiff was put on sufficient notice of the amendment to the Plan which added the forum-selection clause because Plaintiff was properly notified consistent with the statutory requirements of ERISA; and that Plaintiff agreed to the forum-selection clause when he sought benefits under the Plan at the time of his retirement.

---

Federal Employers Liability Act was invalid as it was inconsistent with the legislative history of the Act. This case differs from *Boyd* since it pertains to the Employee Retirement Income Security Act rather than the Federal Employers Liability Act. In addition, the "legislative history of ERISA clearly demonstrates that Congress desires open access to several venues for beneficiaries seeking to enforce their rights." *Smith,* 769 F.3d at 935. Thus, *Boyd* is inapposite.

[8] Plaintiff also argues that because Defendant PRC does not maintain its primary office and mailing address in New York City, venue in the Southern District of New York is improper under the relevant venue statute. Defendants do not specifically address this argument, but argue instead that Defendant PRC's primary place of business "is not the relevant inquiry here due to the existence of a forum-selection clause." [ECF 18 at 10]. Defendants are correct. As the parties have consented to venue in New York through the forum-selection clause, it is not necessary for this Court to decide whether the Southern District of New York would otherwise be a proper venue. *See Insurance Corp. of Ireland, Ltd.v. Compagnie des Bauxites de Guinee,* 456 U.S. 694, 703-4 (1982) (holding that by contract, parties may agree to submit themselves to the jurisdiction of a court); *Burger King Corp. v. Rudzewicz,* 471 U.S. 462, 472 n.14 (1985) (noting that parties may consent to the jurisdiction of a court by agreeing to a forum-selection clause).

Though Plaintiff argues that he did not have the opportunity to negotiate the addition of the forum-selection clause in the Plan or to be heard on the issue, extensive participation in negotiating a forum-selection clause is not necessary. *See Carnival Cruise Lines, Inc. v. Shute,* 499 U.S. 585, 591, 595 (1991) (holding a form contract on a cruise ticket that contained a forum-selection clause to be enforceable, although "it would be entirely unreasonable for us to assume that respondents--or any other cruise passenger--would negotiate with petitioner the terms of a forum-selection clause . . . ."); *see also Danganan v. Guardian Protection Servs.,* 2015 WL 6103386, at *2, 4 (E.D. Pa. Oct. 16, 2015) (upholding the enforceability of a forum-selection clause even though the plaintiff did not have the chance to negotiate the terms of the clause). Further, as Plaintiff sought benefits under the terms of the Plan after the addition of the forum-selection clause, it is evident that the provisions within the Plan had been accepted by Plaintiff. *See, e.g., Kemmerer v. ICI Americas Inc.,* 70 F.3d 281, 287 (3d Cir. 1995) (noting that a pension plan "constitutes an offer that the employee, by participating in the plan, electing a distributive scheme, and serving the employer for the requisite number of years, accepts by performance"); *see also Mathias,* 203 F. Supp. 3d at 576 (finding that "it was clear that acceptance of the benefits provided by [defendant] was conditioned upon the acceptance of the terms in the various plan documents," including a forum-selection clause).

Plaintiff also argues that he did not receive proper notice of the forum-selection clause because the clause was added to the Plan in January 2016, and he did not receive actual notice of the amended Plan until March 2017, five months after his retirement in October 2016. Defendants disagree and argue that Plaintiff received proper notice per the statutory requirements of ERISA.

The statutory guidelines of ERISA must be followed when providing notice of any

change in a plan's benefits or other modifications to the ERISA governed plan.[9] *Lettrich v. J.C. Penney Co., Inc.,* 213 F.3d 765, 769 (3d Cir. 2000). ERISA provides that:

> If there is a modification or change . . .(other than a material reduction in covered services or benefits provided in the case of a group health plan . . .) a summary description of such modification or change shall be furnished not later than 210 days after the end of the plan year in which the change is adopted to each participant, and to each beneficiary who is receiving benefits under the plan. If there is a modification or change . . . of this title that is a material reduction in covered services or benefits provided under a group health plan . . .a summary description of such modification or change shall be furnished to participants and beneficiaries not later than 60 days after the date of the adoption of the modification or change.

29 U.S.C. § 1024(b)(1)(b).

The requirements for notice, therefore, depend on whether the modification to the plan is material or non-material. The notice requirement mandates that participants of ERISA-governed plans must be informed of changes related to a "**material reduction** in covered services or plan benefits," within 60 days of the date in which the change is adopted. *See* 29 U.S.C. § 1024(b)(1)(b) (emphasis added). A material reduction, under ERISA, is considered to be:

> [A]ny modification to the plan or change in the information required to be included in the summary plan description that, independently or in conjunction with other contemporaneous modifications or changes, would be considered by the average plan

---

[9] ERISA's notice requirements reflect Congress' intent to limit employers' liability with respect to notice, as the requirements are evident of "'Congress's judgment that employees themselves are best served by an enforcement regime [of ERISA] that minimizes employers' expected liability for reporting and disclosure violations.'" *Jordan v. Fed. Exp. Corp.,* 116 F.3d 1005, 1013-14 (3d Cir. 1997) (quoting *Hozier v. Midwest Fasteners, Inc.,* 908 F.2d 1155, 1170 (3d Cir. 1990)); *see, e.g., Conkright v. Frommert,* 559 U.S. 506, 517 (2010) (quoting *Varity Corp. v. Howe,* 516 U.S. 489, 497 (1996)) (explaining that the provisions of ERISA were drafted to not "unduly discourage employers from offering [ERSIA] plans in the first place."). Generally, as long as the statutory notice requirements of ERISA are followed, notice is deemed to be satisfactory. *See, e.g,. Lettrich v. J.C. Penney Co., Inc.,* 213 F.3d 765, 771 (3d Cir. 2000) (noting "the general rule that [ERISA] plan amendments are valid in spite of inadequate notice," but "participants may recover the benefits under the plan before the amendment if they can demonstrate cognizable prejudice from the company's failure to fully comply with ERISA's disclosure requirements. . . .").

> participant to be an important reduction in covered services or benefits under the plan…
>
> A "reduction in covered services or benefits" generally would include any plan modification or change that: eliminates benefits payable under the plan; reduces benefits payable under the plan, including a reduction that occurs as a result of a change in formulas, methodologies or schedules that serve as the basis for making benefit determinations; increases premiums, deductibles, coinsurance, copayments, or other amounts to be paid by a participant or beneficiary; reduces the service area covered by a health maintenance organization; establishes new conditions or requirements (e.g., preauthorization requirements) to obtaining services or benefits under the plan.

29 C.F.R. § 2520.104b-3(d)(3)(i)-(ii).

Based on the above definition, the addition of the forum-selection clause was not a material modification of the Plan. The adoption of a forum-selection clause is not a plan modification or change that eliminates benefits of an ERISA plan, reduces benefits payable under an ERISA plan, increases premiums, deductibles, coinsurance, copayments, or other amounts to be paid under an ERISA plan. Additionally, a forum-selection clause does not reduce the service area by a health organization, nor does it establish new conditions or requirements to obtain benefits under the plan. Thus, the addition of a forum-selection clause does not constitute a material reduction in plan benefits, and is not subject to the 60-day notice requirement. *See Curcio v. John Hancock Mut. Life Ins. Co.,* 33 F.3d 226, 236 (3d Cir. 1994) (noting that a material term of a plan is one that establishes a benefit of the plan). Instead, the inclusion of a forum-selection clause constitutes a non-material change. ERISA requires plan participants to be informed of non-material changes within 210 days of the end of the plan year in which the change was added. *See* 29 U.S.C. § 1024(b)(1)(b). Thus, Plaintiff must have been notified of the addition of the forum-selection clause within the 210-day notice requirement.

Here, the Plan was amended to include the forum-selection clause on January 1, 2016. (*See* Plan at B-10). As the plan year ended on December 31, 2016, (*see id.*), to receive proper notice under ERISA, Plaintiff must have been notified of the amendment within the first 210 days of 2017. *See* 29 U.S.C. § 1024(b)(1)(b). It is uncontested that a copy of the Plan was provided to Plaintiff to reflect this amendment in March of 2017. Because March 2017 falls within the 210-day notice requirement, the statutory notice requirement was satisfied. *See Nationwide Mut. Ins. Co. v. Teamsters Health and Welfare Fund of Philadelphia and Vicinity,* 695 F.Supp. 181, 185 (E.D. Pa. 1998) (finding that because an insurance plan participant governed by ERISA was notified of a plan amendment within the 210-day requirement of § 1024(b)(1)(b), the notice requirement was satisfied); *Folk v. Schaffer,* 695 F.Supp. 181, 185 (E.D. Pa. 1998) (noting that notice of an ERISA plan amendment was sufficient because it was within the 210-day requirement of § 1024(b)(1)(b)). Accordingly, Plaintiff's lack of notice argument is without merit.

In sum, after considering Plaintiff's arguments, this Court finds the Plan's forum-selection clause is not incompatible with the venue provision of ERISA and that Plaintiff received adequate notice of the amendment including the clause. Therefore, the clause is valid and enforceable. In light of this finding, this Court will next consider whether the public factors identified in *Jumara* disfavor a transfer.

## PUBLIC FACTORS

As noted, when a forum-selection clause exists, the court "must deem the private-interest factors to weigh entirely in favor of the preselected forum" and consider the public-interest factors only. *Atl. Marine,* 571 U.S. at 64. The party opposing the enforcement of a forum-

selection clause "bear[s] the burden of showing that public-interest factors overwhelmingly disfavor a transfer." *Id.* at 67. The Third Circuit has considered public-interest factors including:

> [T]he enforceability of the judgment; practical considerations that could make the trial easy, expeditious, or inexpensive; the relative administrative difficulty in the two fora resulting from court congestion; the local interest in deciding local controversies at home; the public policies of the fora; and the familiarity of the trial judge with the applicable state law in diversity cases.

*Jumara v. State Farm Ins. Co.,* 55 F.3d 873, 879-80 (3d Cir. 1995).

Because this action involves an ERISA claim arising under, federal law, most of the public factors are irrelevant or invalid. *See Carnegie Mellon Univ. v. Marvell Tech. Group Ltd.,* 2009 WL 3055300, at *5 (W.D. Pa. Sept. 21, 2009) (noting that "enforceability of the judgment, public policies of the fora, and familiarity of the trial judge with the applicable state law need not be considered since the conflicts between the parties arise under federal law."); *see also Irwin v. CSX Transp., Inc.*, 2010 WL 1071428, at *5 (E.D. Pa. Mar. 22, 2010) (noting that "the enforceability of the judgment and the choice of law factors are largely irrelevant in this matter because a federal statute is at issue and because the judgment would be enforceable in either district."). Plaintiff has not argued that there are any practical considerations that could make trial easier, expeditious or inexpensive, nor has Plaintiff made any arguments related to local interests in deciding local controversies at home. Similarly, Plaintiff has not offered any arguments related to administrative difficulties in the fora from court congestion. As Plaintiff has the burden of showing that such factors overwhelmingly weigh against transfer, Plaintiff has not done so and, therefore, these factors are either neutral or weigh in favor of the transfer. *See Keller v. McGraw-Hill Global Educ. Holding, LLC,* 2016 WL 4035613, at *7 (E.D. Pa. July 28, 2016) (reasoning that because the plaintiff did not provide any arguments that the public-interest factors weighed against transfer, the court rendered the relevant factors as neutral).

Overall, Plaintiff has not met his burden of showing that such public-interest factors overwhelmingly weigh against transfer. Consequently, transfer to the Southern District of New York is appropriate. Defendants' motion to transfer is granted.[10]

**CONCLUSION**

For the reasons set forth herein, Defendants' motion to dismiss pursuant to Rule 12(b)(3) is denied, and Defendants' motion to transfer the case to the United States District Court for the Southern District of New York is granted. An Order consistent with this Memorandum Opinion follows.

*NITZA I. QUIÑONES ALEJANDRO, J.*

---

[10] Plaintiff filed a motion requesting oral argument and/or a hearing. [ECF 19]. Local Rule of Civil Procedure for the Eastern District of Pennsylvania 7.1(f) provides that "[t]he court may dispose of a motion without oral argument." L.R. 7.4(f). The Court has discretion regarding whether to grant or deny a motion for oral argument. *See 7 Eleven Inc v. Sodhi,* 706 F. App'x 777, 779 (3d Cir. 2017) (noting that the "District Court has discretion to determine whether to hold oral argument on a motion."). As the arguments Plaintiff sought to address by way of oral argument have been considered herein, the request for oral argument is denied. In light of this ruling, Defendants' motion to strike Plaintiff's request for oral argument and/or a hearing is denied, as moot. [ECF 20].